IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEBRA LYNN KUNTZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-0480-CV-S-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION AFFIRMING FINAL DECISION**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her disability applications. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff is a 49-year-old female with past work as an order filler. The ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine with right shoulder radiculopathy as of November 2008; and mild asthma.

The ALJ determined that, with certain nonexertional limitations, Plaintiff retained the ability to perform medium work through September 2008 and light work thereafter. (Plaintiff was injured in a motor vehicle collision in October 2008.) According to a vocational expert (VE) who testified at the hearing, a hypothetical worker with abilities matching those the ALJ found Plaintiff to retain through September 2008 could perform Plaintiff's past work as an order filler. The VE also testified that a hypothetical worker limited to light work with the nonexertional limitations found by the ALJ would be able to work as an usher, photocopy machine operator, and electrical subassembler. Based on the VE's testimony the ALJ found Plaintiff was able to perform her past work through

September 2008 and was thereafter able to make a successful adjustment to other work that exists in significant numbers in the national economy, precluding a finding of disability.

## II. DISCUSSION

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). Substantial evidence is relevant evidence a reasonable mind would accept as adequate to support a conclusion. *Id.* Evidence that both supports and detracts from the ALJ's decision must be considered. *Id.* If two inconsistent positions can be drawn from the evidence, and one of those positions represents the ALJ's decision, it will be affirmed. *Id.*

Plaintiff first contends the ALJ's residual functional capacity (RFC) assessment is not based on medical evidence. Brief, Doc. 14, p. 17. But in her argument Plaintiff does not reference the ALJ's RFC assessment. Rather, she relies on the ALJ's finding that Plaintiff's impairments of anxiety and a history of methamphetamine abuse were not severe. *Id.* at p. 18-19. This finding—at step two of the analysis—properly occurred before the RFC assessment. See 20 C.F.R. § 404.1520(a)(4)(ii), (iv). Plaintiff has not established that the ALJ's RFC assessment lacks medical evidence supporting it.

Plaintiff next argues the ALJ's RFC assessment—which contains no mental limitations—is not supported by substantial evidence in the record as a whole because the ALJ failed to consider her Global Assessment of Functioning (GAF) scores and find mental limitations based on them.[1] At least one of her scores was determined by Rick D. Thomas, PhD, who performed a consultative examination of her. He assessed her as having a GAF rating of 50.[2] He also noted she had another GAF rating of 50 the

---

[1] A GAF score indicates a clinician's judgment of an individual's overall level of functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000).

[2] A GAF rating in the 41–50 range reflects an individual with "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious

past year, although it is unclear whether this rating was determined by him or someone else.

Just because the ALJ did not discuss Plaintiff's GAF ratings does not mean he did not consider them. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). And the ALJ's RFC assessment is supported by substantial evidence in the record as a whole notwithstanding Plaintiff's GAF ratings.

Plaintiff's medical records span from 2003 to 2010. Plaintiff never received any treatment from a psychologist, psychiatrist, or counselor. Her treatment consisted of medications prescribed by her regular physicians. Plaintiff's responses to this treatment indicates her impairments were not severe.

First, in 2003 Plaintiff received insomnia medication, and a later note states she was sleeping well. Two years later she was prescribed Effexor (used to treat depression and anxiety), although no mental-health symptoms were noted. The record is unclear what effect Effexor had or how long Plaintiff took it.

December 2005 was when her most frequent complaints began: she reported depression, crying spells (once), and panic attacks. She was diagnosed with major depressive disorder and generalized anxiety disorder, and she was treated with depression medication and Xanax (used to treat anxiety disorder and panic disorder). But her prescribing doctor discharged her from his care after she appeared at his clinic in July 2006 demanding an early refill of her Xanax prescription. She was shaking, speaking loudly, and appeared to be very anxious, so law enforcement was called. A nurse told Plaintiff she would not receive an early refill, and she jumped out of her chair and moved toward the nurse. The officer intervened and escorted Plaintiff out of the clinic. A drug test performed at another location (where Plaintiff attempted to obtain Xanax earlier that day) showed positive results for amphetamine, methamphetamine, and THC.

After this incident in July 2006, Plaintiff saw no doctors for her mental health until Dr. Thomas' consultative examination on April 20, 2007. Plaintiff's report of her

---

impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34.

medications included no antidepressants or antianxiety drugs; in fact, she told Dr. Thomas that she was not depressed, that she disagreed with her depression diagnosis of her previous doctor (who had discharged her), and that she did not want any behavioral health services.  Dr. Thomas' mental status examination revealed that Plaintiff maintained good eye contact and showed no overt anxiety or tremors.  Plaintiff did not exhibit psychotic or harmful behavior, and she was able to remember instructions and maintain concentration and persistence in tasks.  Dr. Thomas did however note that Plaintiff misstated the season (she said it was summer), that she had problems completing a three-dimensional picture, and that she could not manage her funds.  Dr. Thomas also noted Plaintiff's short-term memory was impaired and that she had trouble remembering dates, although he also observed she displayed no memory problems when detailing her physical complaints.  There is little in Dr. Thomas' report that seems to justify his GAF rating of 50 for Plaintiff.

   Plaintiff's next medication treatment for mental-health symptoms was over 2 years later, on October 20, 2009.  This was approximately 2 months before the ALJ denied her applications.  She reported experiencing panic attacks, lots of crying, depression, and anxiety, and she was assessed with depression and anxiety disorder.  She was prescribed Celexa (an antidepressant).  Evidence indicates however that the severe symptoms she was reporting were of recent onset.  Plaintiff had reported that a stressful event—the passing of a good friend from an asthma attack—occurred just 2 weeks previously.  Also, her neurologist noted during a mental status examination in September 2009 (the month before) that she was pleasant and cooperative and that her mood was appropriate and positive.  The neurologist additionally noted her attention span and concentration appeared normal and that she appeared to understand everyday activities and their consequences, her own personal needs, and her current medical situation.

   After 2 weeks of taking Celexa, Plaintiff reported on November 3, 2009, that her anxiety was better, although she also reported difficulty going to sleep and midnight awakening.  Clonazepam (brand name Klonopin, used to treat seizures and panic attacks) was added to Plaintiff's prescriptions.  At her next appointment on December 3, 2009, Plaintiff's Celexa was increased, but the doctor's note is unclear as to why this

was done. The only indication is the statement that "[c]urrent medication seems to be helping only to a small degree," but this statement also appeared in the November 3 note and does not specify whether it refers to her mental health prescriptions or the others she was taking. In any event, the increase in her Celexa (with continued use of Klonopin as needed) apparently was helpful because she did not seek any treatment again until an eye exam in July 2010. In filling out a form at that appointment asking about her health, she did not check the blank for mental/emotional problems.

Plaintiff is correct that a GAF rating of 50 indicates serious mental health symptoms, but given the other evidence in the record the ALJ's decision not to include any mental limitations in his RFC assessment is supported by substantial evidence in the record as a whole.

## III. CONCLUSION

The Commissioner's final decision is affirmed.
IT IS SO ORDERED.


DATE: April 5, 2012  /s/  Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT